UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

MICHAEL CREMEN,

    Plaintiff,

v.                                23-CV-787 (JLS)

DANIEL TARANTINO,
AARON BESECKER,
MICHAEL PHILLIPS,
STEVEN NIGRELLI,
JOHN MONTGOMERY,
KEVIN KRAUSS,
WILLIAM BOLLER,
JOSEPH FAHEY,
JOHN FLYNN,

    Defendants.

---

*Pro se* plaintiff Michael Cremen filed this action seeking relief under 42 U.S.C. § 1983, alleging that Defendants violated his constitutional rights during his arrest, prosecution, and pretrial detention in 2020. Dkt. 1. Cremen paid the filing fee.

For the reasons below, all claims against Defendants Daniel Tarantino and William Boller—and some claims against Defendant John Flynn—are dismissed without leave to amend under 28 U.S.C. § 1915A(b), and all remaining claims are dismissed under 28 U.S.C. § 1915A(b) with leave to amend.

## DISCUSSION

Because Cremen was incarcerated when he filed this action and seeks relief against a governmental entity, this Court must screen his complaint under 28 U.S.C. § 1915A(a).

Section 1915 "provide[s] an efficient means by which a court can screen for and dismiss legally insufficient claims." *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007) (citing *Shakur v. Selsky*, 391 F.3d 106, 112 (2d Cir. 2004)).  A court shall dismiss a complaint in a civil action in which a prisoner seeks redress from a governmental entity, or an officer or employee of a governmental entity, if it determines that the action "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. §§ 1915A(b)(1)–(2).  Generally, a court will afford a *pro se* plaintiff an opportunity to amend or to be heard prior to dismissal, unless it "can rule out any possibility, however unlikely it might be, that an amended complaint would succeed in stating a claim." *Abbas*, 480 F.3d at 639 (internal quotation marks omitted).  But a court may deny leave to amend when any amendment would be futile. *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).

I. **The Complaint**

When evaluating a complaint, courts must accept all factual allegations as true and must draw all inferences in the plaintiff's favor. *See Larkin v. Savage*, 318 F.3d 138, 139 (2d Cir. 2003); *King v. Simpson*, 189 F.3d 284, 287 (2d Cir. 1999).

"Specific facts are not necessary," and the plaintiff "need only 'give fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)); *see also Boykin v. KeyCorp*, 521 F.3d 202, 216 (2d Cir. 2008) ("[E]ven after *Twombly*, dismissal of a *pro se* claim as insufficiently pleaded is appropriate only in the most unsustainable of cases."). A court must "construe [*pro se*] pleadings liberally, particularly when they allege civil rights violations," *McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004), but even pleadings submitted *pro se* must meet the notice requirements of Rule 8 of the Federal Rules of Civil Procedure, *Wynder v. McMahon*, 360 F.3d 73, 79 n.11 (2d Cir. 2004).

This case arises from Cremen's arrest and prosecution on charges that arose from his interaction with a group of protesters on August 28, 2020. Cremen alleges that: his attorney Daniel Tarantino provided ineffective assistance of counsel while conspiring with Erie County District Attorney John Flynn (Dkt. 1, at 13, 17); Flynn engaged in prosecutorial misconduct by filing false charges, tampering with witnesses, falsifying and suppressing evidence, and conspiring with local media and various law enforcement agencies (*id.* at 11); Judge William Boller committed judicial misconduct when he denied Cremen the right to represent himself, illegally remanded him, denied his motions to change venue, and conspired with Flynn (*id.* at 18); reporter Aaron Besecher committed libel against Cremen by printing misinformation about Cremen's case (*id.* at 13); Officer Steven Nigrelli arrested Cremen after saying he was not going to arrest him (*id.* at 15, 17); Officer Joseph

Fahey arrested Cremen three days after he defended "fellow Americans and their property by shooting at [a] mob" that was assembling unlawfully (*id.* at 17); Sheriff John Montgomery tolerated illegal drug commerce and use at the Baxter County Detention Center, and when Cremen complained, detention officers put him in "the hole" (*id.* at 18); Sheriff Kevin Krauss violated COVID protocols at the Allegheny County Jail and allowed Cremen to be detained in a filthy cell (*id.*); and Erie County Holding Center Superintendent Michael Phillips subjected Cremen to unconstitutional conditions of confinement by denying him regular linen changes, access to the law library, haircuts, visits, and nail clippers (*id.* at 19).

## II. Section 1983 Claims

To state a claim under 42 U.S.C. § 1983, "the plaintiff must allege that the challenged conduct (1) was attributable to a person acting under color of state law, and (2) deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States." *Whalen v. Cnty. of Fulton*, 126 F.3d 400, 405 (2d Cir. 1997) (citing *Eagleston v. Guido*, 41 F.3d 865, 875–76 (2d Cir. 1994)). "Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993) (citing *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985)).

To establish liability against an official under Section 1983, a plaintiff must allege that individual's personal involvement in the alleged constitutional violation; it is not enough to assert that the defendant is a link in the chain of command. *See*

4

*McKenna v. Wright*, 386 F.3d 432, 437 (2d Cir. 2004). Moreover, *respondeat superior* liability is not available in a Section 1983 action. *See Hernandez v. Keane*, 341 F.3d 137, 144 (2d Cir. 2003). "[T]here is no special rule for supervisory liability. Instead, a plaintiff must plead and prove that each Government-official, through the official's own individual actions, has violated the Constitution." *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020) (internal quotation marks omitted).

### A.   Defendant Flynn

A prosecutor is entitled to "absolute immunity for . . . conduct 'intimately associated with the judicial phase of the criminal process.'" *Hill v. City of N.Y.*, 45 F.3d 653, 660–61 (2d Cir. 1995) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976). The "relevant question" is "whether a reasonable prosecutor would view the acts challenged by the complaint as reasonably within the functions of a prosecutor." *Giraldo v. Kessler*, 694 F.3d 161, 166 (2d Cir. 2012). If they are, "absolute immunity applies to protect the prosecutor[,] even in the face of a complaint's allegations of malicious or corrupt intent behind the acts." *Id.* If it were otherwise, "the absolute immunity would not be absolute." *Id.*

Cremen alleges that Flynn engaged in malicious prosecution by "filing false charges for victimless crimes and pretended offenses," tampering with witnesses, and falsifying and suppressing evidence—all actions taken during the judicial phase of the criminal case at issue in this action. *See* Dkt. 1, at 11. With respect to this alleged conduct, Flynn is absolutely immune to suit. Accordingly, to the extent Cremen's claims against Flynn are based on these actions intimately associated

5

with the judicial phase of the criminal process, they are dismissed without leave to amend under 28 U.S.C. § 1915A(b).

Cremen also alleges that Flynn "improperly used the media to defame [Cremen's] character." Dkt. 1, at 11. Statements made by prosecutors "to the media are not entitled to absolute immunity." *Buckley v. Fitzsimmons*, 509 U.S. 259, 277–78 (1993); *accord Flagler v. Trainor*, 663 F.3d 543, 549 (2d Cir. 2011). Cremen's allegations regarding Flynn's statements to the press lack detail and, therefore, fail to state a claim. This portion of Cremen's claim against Flynn, therefore, is dismissed under 28 U.S.C. § 1915A(b). But Cremen may amend his complaint to include additional facts, if possible, regarding what Flynn said to the press, when he made the alleged statements, and the impact of those statements.

### B. Defendant Tarantino

Criminal defense attorneys—whether a public defender, a court-appointed attorney, or privately retained counsel—are not persons acting under color of law "when performing a lawyer's traditional functions as counsel to a defendant in a criminal proceeding." *Polk Cnty. v. Dodson*, 454 U.S. 312, 325 (1981) (public defender in state criminal prosecution did not act under color of state law in the ordinary course of conducting the defense); *see O'Donoghue v. United States SSA*, 828 F. App'x 784, 787 (2d Cir. 2020) (private attorneys in personal injury suit between private parties are not state actors for purposes of Section 1983).

Section 1983 liability may attach when a defense attorney conspires with state actors to deprive the plaintiff of his or her constitutional rights. *See Dennis v. Sparks*, 449 U.S. 24, 27–28 (1980); *see also McCloud v. Jackson*, 4 F. App'x 7, 9–10 (2d Cir. 2001) (privately retained counsel could not be held liable under Section 1983 "because there was no showing that he worked with state officials to deprive [the plaintiff] of federal rights").

Cremen asserts claims against his criminal defense attorney, Tarantino, for actions allegedly taken during his criminal proceeding—specifically, that Tarantino provided ineffective assistance of counsel by not advising Cremen that he could not leave the jurisdiction during the pendency of his case, failing to inform the court of Cremen's address, and not filing any motions. *See* Dkt. 1, at 17. Cremen does not allege that Tarantino conspired with a state official to deprive him of a constitutional right, and the complaint contains nothing to indicate that Cremen could allege such facts.

Because Tarantino is not a state actor, and because Cremen does not allege that Tarantino conspired with a state actor to deprive Cremen of his constitutional rights, the against Tarantino are dismissed under 28 U.S.C. § 1915A(b), without leave to amend.

C.    **Defendant Judge Boller**

Judges are absolutely immune from suit for money damages for any actions taken within the scope of their judicial responsibilities. *Mireles v. Waco*, 502 U.S. 9, 9–10 (1991). Judicial immunity is not pierced by allegations of bad faith or malice

7

by an unsatisfied litigant. *Pierson v. Ray*, 386 U.S. 547, 554 (1967). Judicial immunity does not bar claims based on non-judicial actions or judicial action taken "in the complete absence of all jurisdiction." *Mireles*, 502 U.S. at 11–12. The Supreme Court expressly applied the doctrine of judicial immunity to actions brought pursuant to Section 1983. *See Pierson*, 386 U.S. at 554.

Here, Cremen's allegations against Judge Boller relate entirely to actions allegedly taken during judicial proceedings. *See* Dkt. 1, at 18 (alleging that certain conduct occurred "[d]uring a court appearance on July 2, 2021," and that Judge Boller "denied Plaintiff's right to represent himself pro se" and "illegally remanded Plaintiff"). There is no indication in the complaint that the judicial performance Cremen challenges is based on non-judicial actions, and there are no facts establishing that Judge Boller acted in the absence of all jurisdiction. *See Safran v. Singas*, No. 20-CV-4537 (PKC)(SMG), 2020 WL 7125232, at *2 (E.D.N.Y. Dec. 4, 2020) (judicial immunity barred claim that the state court judge presiding over the plaintiff's criminal case failed to take certain steps in the course of that case). Cremen's claims against Judge Boller, therefore, are dismissed under 28 U.S.C. § 1915A(b), without leave to amend, based on absolute judicial immunity.

### D. Defendant Besecher

Cremen contends that Besecher, a reporter, committed libel and defamation when he (1) falsified a document that Cremen sent to the Buffalo News, and (2) printed misinformation about Cremen.

In New York, "[d]efamation is the making of a false statement [that] tends to expose the plaintiff to public contempt, ridicule, aversion[,] or disgrace, or induce an evil opinion of him in the minds of right-thinking persons, and to deprive him of their friendly intercourse in society." *Elias v. Rolling Stone LLC*, 872 F.3d 97, 104 (2d Cir. 2017) (internal quotation marks omitted) (quoting *Stepanov v. Dow Jones & Co.*, 120 A.D.3d 28, 34, 987 N.Y.S.2d 37, 41 (1st Dep't 2014)). To state a defamation claim, "a complaint must allege (1) a false statement that is (2) published to a third party (3) without privilege or authorization, and that (4) causes harm, unless the statement is one of the types of publications actionable regardless of harm." *Id.* (internal quotation marks omitted).

Cremen offers no detail as to the content of any statement Besecher allegedly made. Specifically, he does not allege what the statements said and does not explain why the statements are false. He does not cite the date the alleged statements were published or what media outlet published the statements. Instead, Cremen alleges generally that the statements were made from October 6, 2020, to the present by the Buffalo News and "local CBS, ABC, NBC, and other media outlets." Dkt. 1, at 13. Nor does Cremen identify any harm he suffered as a result of publication of the statements. His claims against Besecher, therefore, are dismissed pursuant to 28 U.S.C. § 1915A(b). But Cremen may amend these claims to allege additional facts, if possible, consistent with the standard discussed above.

When drafting any amended complaint, Cremen should be aware that N.Y.C.P.L.R. § 215(3) requires that actions asserting claims for defamation—*e.g.*, "libel, slander, [or] false words causing special damages"—be commenced within one year. New York "adheres to a single publication rule in determining when the statute of limitations begins to run on a defamation claim." *Van Buskirk v. The N.Y. Times Co.*, 325 F.3d 87, 89 (2d Cir. 2003). That rule "states that a defamation claim accrues at . . . the earliest date on which the work was placed on sale or became generally available to the public." *Id.* Because "the single publication rule applies to Internet publishing," *id.*, "the continuing availability of any alleged defamatory statement, online or otherwise, does not toll the statute of limitations." *Parker v. Blackerby*, No. 16-CV-6475-EAW, 2017 WL 1383919, *6 (W.D.N.Y. 2017).

### E. Defendants Nigrelli and Fahey

Cremen's complaint appears to assert claims based on his arrest, but his allegations are conclusory and do not plausibly allege that either Nigrelli or Fahey was personally involved in his arrest. The claims against Nigrelli and Fahey, therefore, are dismissed, with leave to amend. Any amended complaint must allege facts that show how each Defendant, through his or her own individual actions, violated the Constitution. *See Tangreti*, 983 F.3d at 618.

To the extent that Cremen intends to assert a Section 1983 claim for false arrest, any amended complaint must allege facts that show: "(1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not

otherwise privileged." *Ashley v. City of N.Y.*, 992 F.3d 128, 136 (2d Cir. 2021) (alteration omitted) (quoting *Jocks v. Tavernier*, 316 F.3d 128, 134–35 (2d Cir. 2003)). Probable cause "is a complete defense to an action for false arrest." *Id.* An officer "has probable cause to arrest when [he or she possesses] facts sufficient to warrant a prudent person to believe that the suspect had committed or was committing an offense." *Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 128 (2d Cir. 1997).

Cremen also should be aware that any claims related to his arrest, prosecution, or conviction may be barred by *Heck v. Humphrey*, 512 U.S. 477 (1994), which provides, in relevant part:

> [T]o recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a [Section] 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under [Section] 1983.

*Id.* at 486–87 (footnote omitted). If a judgment in favor of the Section 1983 plaintiff "would necessarily imply the invalidity of his conviction . . . the complaint must be dismissed." *Id.* at 487. As such, any amended complaint must include details about

11

any ongoing prosecution[1] related to the claims asserted, and if the prosecution has concluded, that any conviction related to the asserted claims has been invalidated.

### F. Defendants Montgomery, Krauss, and Phillips

Cremen's complaint appears to allege conditions-of-confinement claims based on (1) illegal drug use by detainees at the Baxter County Detention Center, and being put in "the hole" when he complained about that conduct, (2) COVID protocol violations and the lack of cleanliness at the Allegheny County Jail, and (3) the denial of regular linen changes, access to the law library, haircuts, visits, and nail clippers due to COVID restrictions at the Erie County Holding Center. *See* Dkt. 1, at 18–19.

Because Cremen does not adequately alleged the personal involvement of Montgomery, Krauss, and Phillips in this alleged conduct, the claims against them must be dismissed. But Cremen may amend these claims to allege additional facts, if possible, regarding the personal involvement of those Defendants.

As explained above, *respondeat superior* liability is not available in a Section 1983 action. In other words, a supervisory defendant does not personally violate a plaintiff's constitutional rights simply "by reason of [that defendant's] supervision of others who committed the violation." *Tangreti*, 983 F.3d at 619. A constitutional violation "must be established against the supervisory official directly." *Id.* at 618.

---

[1] "[T]he Supreme Court and the Second Circuit 'extended *Heck*'s reach to [S]ection 1983 lawsuits brought during pending criminal prosecutions.'" *Dawson v. Lippiccolo*, 590 F. Supp. 3d 514, 517 (E.D.N.Y. 2022) (quoting *Smalls v. Collins*, 10 F.4th 117, 137 (2d Cir. 2021), *abrogated on other grounds by Thompson v. Clark*, 596 U.S. 36 (2022)).

Any amended complaint must allege facts that show how each Defendant, through his or her own individual actions, violated the Constitution. *See id.*

To the extent that Cremen intended to assert conditions-of-confinement claims, any amended complaint must plausibly allege (1) a "sufficiently serious" condition within the jail or detention center, and (2) that a specific defendant "acted with deliberate indifference to the challenged condition." *See Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017). The first element can be alleged with facts showing that conditions in the jail "either alone or in combination, pose[d] an unreasonable risk of serious damage to his health." *Id.* at 30. The second element is alleged by showing that "the defendant-official acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-official knew, or should have known, that the condition posed an excessive risk to health or safety." *Id.* at 35. A detainee "must [allege] that [the] official acted intentionally or recklessly, and not merely negligently." *Id.* at 36.

### III. Leave to Amend

Cremen should be aware that an amended complaint completely replaces the prior complaint in the action and "renders [any prior complaint] of no legal effect." *Int'l Controls Corp. v. Vesco*, 556 F.2d 665, 668 (2d Cir. 1977); *see also Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994). Any amended complaint, therefore, must include all allegations against each Defendant, so the amended

complaint stands alone as the only complaint that Defendants must answer in this action.

Individuals whose names Cremen does not know should be referred to as "John Doe" or "Jane Doe" in both the caption and the body of the amended complaint. Cremen should include any details that will assist in identifying any Doe defendants. Any amended complaint also must comply with Rules 8 and 10 of the Federal Rules of Civil Procedure.

### IV. Motion to Correct Complaint and Issue Subpoenas

Cremen moved to correct certain items, and add certain details, to the complaint. Dkt. 7, at 1. He also asked the Court to issue a subpoena to various entities. *See id.* at 1–2. In light of the conclusions in this decision and order—including the opportunity to file an amended complaint—the Court denies this motion as (1) moot as to the request to amend, and (2) premature as to the request for subpoenas.

### CONCLUSION

For the above reasons, (1) all claims against Defendants Tarantino and Judge Boller are dismissed without leave to amend, and those Defendants will be terminated from this action, (2) the claims against Defendant Flynn based on alleged use of the media are dismissed with leave to amend, and all other claims against Flynn are dismissed without leave to amend, and (3) all other claims against other named Defendants are dismissed with leave to amend.

## **ORDER**

IT HEREBY IS ORDERED that all claims against Defendants Daniel Tarantino and William Boller are dismissed without leave to amend, pursuant to 28 U.S.C. § 1915A(b), and the Clerk of Court shall terminate those Defendants; and it is further

ORDERED that the claims against Defendant Flynn based on alleged use of the media are dismissed with leave to amend, and all other claims against Flynn are dismissed without leave to amend; and it is further

ORDERED that all other claims against other named Defendants are dismissed with leave to amend; and it is further

ORDERED that any amended complaint is due by **May 5, 2025**; and it is further

ORDERED that, if Cremen does not file an amended complaint by May 5, 2025, the complaint shall be dismissed with prejudice pursuant to 28 U.S.C. § 1915A(b), and the Clerk of Court shall close this case without further order; and it is further

ORDERED that Cremen's motion to correct the complaint and issue subpoenas (Dkt. 7) is denied; and it is further

ORDERED that the Clerk of Court shall send to Cremen, along with a copy of this order, a copy of the original complaint (Dkt. 1), a blank Section 1983 complaint form, and the instructions for preparing an amended complaint; and it is further

ORDERED that, if the complaint is dismissed because Cremen has failed to file an amended complaint, this Court hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this order would not be taken in good faith and, therefore, denies leave to appeal to the Court of Appeals *in forma pauperis*. *See Coppedge v. United States*, 369 U.S. 438 (1962). Further requests to proceed on appeal *in forma pauperis* should be directed, on motion, to the United States Court of Appeals for the Second Circuit, in accordance with Rule 24 of the Federal Rules of Appellate Procedure; and it is further

ORDERED that Cremen shall notify the Court in writing if his address changes; the Court may dismiss the action if Cremen fails to do so.

Dated:    March 21, 2025
           Buffalo, New York

_____
JOHN L. SINATRA, JR.
UNITED STATES DISTRICT JUDGE